NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2509
_____

UNITED STATES OF AMERICA

v.

DIONICIO GOMEZ,
Appellant
_____

On Appeal from United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-07-cr-00520-001 )
District Judge:  Honorable Stewart Dalzell
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 28, 2013

Before:  FISHER, JORDAN and ALDISERT, *Circuit Judges*.

(Filed: November 4, 2013)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Dionicio Gomez appeals the judgment of the United States District Court for the Eastern District of Pennsylvania imposing a 97-month sentence. For the reasons that follow, we will affirm.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

On May 1, 2005, Gomez was arrested for his involvement in the sale of one kilogram of cocaine to an undercover police officer. Performing a valid search incident to arrest, an officer found a loaded Taurus 9mm handgun in Gomez's right front pants pocket. On August 29, 2007, a grand jury in the Eastern District of Pennsylvania returned a three-count indictment charging Gomez with: conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 846 (Count One); distribution of 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count Two); and possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(a) (Count Three).

Though the record does not make clear precisely when Gomez was released after his 2005 arrest, Gomez was rearrested on December 13, 2007 following his indictment. On December 18, 2007, he was released on bail. As conditions of his pretrial release, Gomez was required to surrender his passport, restrict his travel to within the Eastern District of Pennsylvania, and report to the United States Pretrial Services every Tuesday. Pretrial Services lost contact with Gomez after January 10, 2008. Because he violated the conditions of his pretrial release, the District Court executed a warrant for his arrest on January 17, 2008.

2

Though he surrendered his passport, Gomez was able to abscond to the Dominican Republic by obtaining a letter from the Dominican Consulate allowing him to leave the United States. He did not inform the Consulate that he was out on pretrial release or that this travel had been restricted. On March 24, 2011, the United States Marshal Service arrested Gomez in the Dominican Republic and returned him to the United States to appear on the charges from the 2007 indictment.

Gomez elected to proceed to trial, and on February 10, 2012, a jury convicted him on Count One, conspiracy to distribute and possess with intent to distribute 500 or more grams of cocaine, and Count Two, distribution of 500 or more grams of cocaine. The jury acquitted on Count Three, possession of a firearm in furtherance of a drug trafficking crime.

The District Court conducted a sentencing hearing on May 23, 2012.[1] The Presentence Investigation Report assigned Gomez a base offense level of 26. It then added two levels for possession of a firearm pursuant to U.S.S.G. § 2D1.1(b)(1) and two levels for obstruction of justice pursuant to U.S.S.G. § 3C1.1. Gomez had zero criminal history points, placing him in criminal history category I. This resulted in an advisory Sentencing Guidelines range of 97 to 121 months. The District Court imposed a sentence of 97 months. This timely appeal followed.

II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291. We "review factual findings relevant to the Guidelines for clear error and … exercise plenary review over a district court's interpretation of the

---

[1] Gomez was sentenced under the November 1, 2011 edition of the Sentencing Guidelines.

Guidelines." *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007). We review the substantive reasonableness of the sentence imposed for an abuse of discretion. *United States v. Tomko*, 562 F.3d 558, 567-68 (3d Cir. 2009) (en banc) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).

III.

Our review is for "reasonableness," which the Supreme Court has crystallized into a two-step inquiry: first, we inquire whether the District Court's sentencing decision was procedurally sound; and second, we inquire whether it was substantively reasonable. *Gall*, 552 U.S. at 51. Ensuring the proper calculation of the Guidelines range falls under the procedural prong. *United States v. Smalley*, 517 F.3d 208, 214 (3d Cir. 2008).

On appeal, Gomez argues that the District Court erred: (A) in applying a two-level enhancement for possession of a firearm; and (B) in applying a two-level enhancement for obstruction of justice. We disagree.

A.

We first consider whether the District Court erred in applying a two-level enhancement for possession of a firearm, pursuant to U.S.S.G. § 2D1.1(b)(1).

Gomez argues that the District Court erred in applying this enhancement because he was acquitted of the crime of possessing a firearm in furtherance of a drug trafficking crime. He contends that because he never brandished the firearm during the drug sale – or even made its presence known – the District Court erred in determining the firearm was used "in connection with" the offense. This argument is not persuasive.

Factual findings related to the Guidelines must be supported by a preponderance of the evidence, and we will affirm the District Court's factual findings unless they are clearly

4

erroneous. *Grier*, 475 F.3d at 561. Furthermore, conduct underlying a charge of which the defendant has been acquitted can "be considered at sentencing despite the acquittal, 'so long as that conduct has been proved by a preponderance of the evidence.'" *United States v. Berry*, 553 F.3d 273, 281 (3d Cir. 2009) (emphasis omitted) (quoting *United States v. Watts*, 519 U.S. 148, 157 (1997)). The Sentencing Guidelines provide for a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). The Guidelines further state that "[t]he enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.* § 2D1.1 cmt. n.11. Gomez was arrested immediately following a significant drug transaction, at which time the arresting officer found a loaded gun in his front pants pocket. Though Gomez contends that the firearm was legally purchased and that he had it for the purpose of his legitimate business, the Government "need only prove that the defendant possessed the weapon during the currency of the offense, not necessarily that he actually used it in perpetrating the crime or that he intended to do so." *United States v. McDonald*, 121 F.3d 7, 10 (1st Cir. 1997). Gomez concedes that the weapon was physically present, and he has not shown that it was clearly improbable that the gun was connected with the drug sale. Therefore, the District Court did not clearly err in finding that Gomez possessed the firearm in connection with the offense for purposes of the sentencing enhancement.

B.

We next consider whether the District Court erred in applying a two-level enhancement for obstruction of justice, pursuant to U.S.S.G. § 3C1.1.

Gomez argues that the District Court erred in applying this enhancement because his failure to abide by the bail conditions was not an attempt to avoid prosecution, but was instead grounded in familial and humanitarian reasons. He claims that he left the United States to care for his ailing father and grandfather, both of whom lived in the Dominican Republic and passed away in early 2008. However, Gomez concedes that even after the death of his father and grandfather, he failed to voluntarily return to the United States. He contends that this was because he did not have the necessary documents to return, not because he was attempting to evade prosecution. This argument is not persuasive.

Section 3C1.1 of the Sentencing Guidelines states:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstruction conduct was related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1. Although simply avoiding or fleeing from arrest will not, ordinarily, trigger application of this adjustment, *see id.* § 3C1.1 cmt. n.5(D), "willfully failing to appear . . . for a judicial proceeding" *will* trigger it, *see id.* § 3C1.1 cmt. n.4(E).

Though Gomez proffers an alternative explanation for his avoidance of prosecution, the question before this Court is whether the District Court clearly erred in determining by a preponderance of the evidence that Gomez, by absconding to the Dominican Republic, willfully obstructed justice. Our review of the record indicates that the District Court did not clearly err. Gomez was under indictment and was clearly aware that he had pending court dates and that his travel had been restricted as a condition of his pretrial release. He failed to inform the Dominican Consulate of these restrictions, and he did not seek permission to travel. Moreover,

6

even after his father and grandfather passed away, Gomez continued to avoid prosecution for nearly three years until his arrest in 2011 by the United States Marshals Service. Gomez's conduct falls well within the purview of U.S.S.G. § 3C1.1. Therefore, the District Court did not clearly err by applying the enhancement for obstruction of justice.

IV.

For the reasons set forth above, we will affirm the District Court's imposition of a 97-month sentence.